Daniels, J.
The plaintiffs, as co-partners, furnished material and performed labor and services in decorating rooms and apartments in the building known as the Rut-land, situated on the corner of Fifty-seventh street and Broadway, in the city of New York. They were employed to do the work by Sidney De Kay, who was under the defendant in the possession and management of the property. It was all performed under his employment, and the payments made upon it, were made by him, and the account for the work was kept in his name. Previous to the em *162 ployment, and while the work was in progress, the defendant held this property in the capacity of a trustee under a conveyance made to him, with the assent, and for the final benefit of Hinna De Kay, the wife of Sidney De Kay.
He, however, took no charge or management of the property, but permitted it to be superintended and controlled entirely by Sidney De Kay. And it was only after the work had all been completed which the plaintiffs performed, that, they were informed of this relation of the defendant to the property. De Kay was authorized to manage the property as the agent of the defendant, and acted in that capacity,, but, in fact, for the ultimate benefit of his wife, for whom the title to it was taken as the purchaser. No authority was. directly conferred by the defendant upon De Kay to- employ the plaintiffs or to have the rooms and apartments in the building decorated. And the evidence of the defendant was to the effect that this decoration was procured and done, at the instance and for the benefit wholly of Mrs. De Kay and her husband. In this state of the facts, the learned judge-presiding at the trial, directed a verdict against the defendant for the balance remaining unpaid to the plaintiffs for their labor and material. The defendant’s counsel desired, to submit to the jury the question of the authority of Mr. De Kay to bind the defendant, but that was refused, to which an exception was taken. And if the authority depended upon the conversations, or interviews, or correspondence, between these two persons, as there was a conflict in their statements, this request was not properly denied. But the court, at the trial, evidently placed the direction of the verdict for the plaintiffs upon the effect of the instrument creating the trusts. And it is upon that effect that the verdict must be maintained, if it can be maintained at all. For, as the plaintiffs were not employed by the defendant, and knew nothing of his relation to the property or the work in which-, they were engaged, until after their debt had accrued, if he conferred no direct authority upon De Kay to employ the plaintiffs for him, he was not liable for the balance remaining unpaid to them, unless that liability resulted from the obligations assumed by him in the creation of the trusts. If, on the contrary, such a liability has been so created, then the defendant must respond to the plaintiffs as he has been required to do by the verdict. For where an indebtedness is created in this manner by an agent acting in his own name, and without any knowledge on the part of the creditors of the liability of the principal, they may proceed against the latter for the recovery of the debt where that has not been satisfied or extinguished, under the employment or act of the agent. Coleman v. First Nat. Bk., 53 N. Y., 388; Cobb v. Knapp, 71 N. Y., 348.
By the instrument creating the trusts, the property known as the Rutland was conveyed to and placed in the possession of the defendant among other things, “ First, to receive- *163 the rents, issues and profits arising therefrom, and to apply them to the expenditures of the trust, and such other expenses as are necessary and proper for the maintenance and preservation of the said premises.”
The other provisions contained in the instrument are not applicable to the question of the defendant’s liability, or to the disposition of this case. If the justice at the trial was right in directing a verdict for the plaintiffs for the balance of their account, it was for the reason that decorating these rooms, in which the work generally consisted, and the material for it was supplied, was appropriate for the maintenance and preservation of the premises. It was for those objects, and those alone, that the defendant, in the first instance, was to receive and apply the rents, issues and profits of the premises, and after that they were to be devoted to other objects during the continuance of the trusts.'
These words employed and describing the purpose for which the rents could be used are not in the least ambiguous. In their ordinary use they were employed in this instrument, their significance is well understood, and they comprehend no more than the obligation to keep up and sustain the premises themselves. The object of the parties in using them seems to have been to impose upon the defendant the duty, and invest him with the right of using only so much of the rents and profits of the premises in this manner, as would prove necessary for their preservation and protection. To that end all appropriate work and additions to the building as an unfinished building were provided for, but no more than that was permitted to be done by the defendant. No latitude of action was conferred upon him, no exercise of discretion beyond what should be required to maintain and preserve the premises. To do that decoration would not be required. That was distinct and different from what might be necessary to maintain and preserve the premises. To decorate them was to ornament or beautify them, in no way as the proof now stands adding to or promoting their maintenance or preservation. It was altogether a different thing, a different process to be adapted and followed, adding in no manner to the maintenance or preservation of the property. The decoration might very well add to the desirability of the apartments, or their acceptance by tenants, as well as their attractions, but the trustee was not empowered to ornament the premises in this manner, but his authority was restricted to maintenance and preservation. The plaintiffs’ work and material consequently were not of the description which the trustee was authorized or empowered to have performed upon the premises. It consisted of other and different acts outside of the authority created by the instrument declaratory of the trusts. The trusts were so far created for one *164 purpose, while the plaintiffs’ labor and material were performed and used for an entirely different object. It was not that either of maintenance or preservation, but as it has been described in their own testimony, that of decoration. And for that the defendant was not liable to be held responsible under the authority and duties created by the trusts. In this respect the case differs wholly from the unreported decision of the court of common pleas in Blewitt v. Olin.
It may be that proof can be produced establishing the existence of an authority beyond the instrument declaring the trusts under which De Kay could bind the defendant for the payment of the plaintiffs' labor and material. But that was not the theory upon which the action was disposed of. If it had stood upon the proof in the case, aside from the construction given to this instrument and that sufficiently tended to establish the authority of De Kay to bind the defendant, then the case would have been for the jury and not for the direction of a verdict. The verdict as it was directed must stand alone upon this instrument. And as it is not supported by what has been therein provided, it should be set aside and a new trial ordered, with costs to abide the event.
Van Brunt, P. J., and Brady, J., concur.